IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES, | § | |
| Plaintiff, | § § § | |
| v. | § § | Civil Action No. 3:19-CV-0723-N |
| SAMUEL H. RODEN, *et al.*, | § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Plaintiff United States' motion for summary judgment [19]. Because the United States has shown that there is no genuine dispute as to any material fact and is entitled to judgment as a matter of law, the Court grants the United States partial summary judgment on the issue of liability. Because the parties dispute the amount of damages, the Court defers issuing final judgment.

### I. ORIGINS OF THE DISPUTE

Defendant Samuel H. Roden reported but failed to pay taxes for tax years 2009 through 2014 and 2016 through 2017. The IRS filed suit against Samuel H. Roden, Sally Seale Roden, individually and as trustee for Sealco Individual Revocable Living Trust, JP Morgan Chase Bank, N.A., and Nationstar Mortgage LLC. The United States dismissed Nationstar Mortgage LLC and JP Morgan Chase Bank, N.A. pursuant to Rule 41(a) of the Federal Rules of Civil Procedure. The United States sought to enforce its federal tax liens on all property belonging to Roden, including the Stonegate Road home.

Prior to the filing of this suit, Roden sent an offer in compromise ("OIC") to the IRS in 2015. The IRS rejected the OIC because Roden failed to timely provide requested financial documentation. In 2018, Roden sent the IRS a new OIC. Roden claims that IRS Revenue Officer David Dodgen conditioned acceptance of the 2018 OIC on the voluntary sale of Roden's Stonegate Road home. Roden began taking steps to sell Stonegate, including clearing two mechanics liens on the house, deeding his wife's interest in the home to himself, and putting the house on the market for sale.

On September 6, 2018, Officer Dodgen completed IRS Form 657, recommending that the IRS categorize Roden's OIC as submitted to hinder or delay collection action. Dodgen based this recommendation on "Roden's long history of tax delinquencies despite Roden's earning substantial income and operating multiple entities." Decl. of David Dodgen 5 [19-1]. Officer Dodgen's general manager agreed with the recommendation and sent the Form 657 to the IRS Memphis office for final determination. On October 17, 2018, IRS Memphis returned Roden's OIC. On March 22, 2019, the United States filed suit to enforce its tax liens on Roden's property.

One week after the filing of this suit, Roden sold his Stonegate home. The parties dispute the amount that the IRS received from the sale. The IRS applied those proceeds to pay Roden's outstanding tax liabilities for tax years 2009, 2010, and 2017, and reduced the balance of tax liabilities for tax year 2011. The United States now seeks summary judgment against Roden for his remaining unpaid federal income tax liabilities for tax years 2011–2014 and 2016. The United States claims that Roden owes $1,561,518.08 in remaining unpaid federal income tax liabilities as of February 24, 2020. Roden disputes

MEMORANDUM OPINION AND ORDER – PAGE 2

the judgment amount but does not appear to otherwise deny the existence or validity of the tax liens.

## II. LEGAL STANDARDS

### A. *Summary Judgment*

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the Court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in her favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, a nonmovant does not satisfy her burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (internal quotations and citations omitted). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

MEMORANDUM OPINION AND ORDER – PAGE 3

### B. Offers in Compromise

A federal tax lien arises upon the date that the IRS assesses unpaid taxes, and the lien applies until the debt is fully satisfied. *Tex. Commerce Bank-Ft. Worth, N.A. v. United States*, 896 F.2d 152, 161 (5th Cir. 1990). Pursuant to 26 U.S.C. § 6321, the liens are effective against all property and rights to property, whether real or personal, including after-acquired property belonging to the taxpayer. *Id.* If the tax debt remains unpaid, the United States is entitled to bring suit under 26 U.S.C. § 7403 to enforce its lien. Courts review the underlying liability de novo and review other administrative determinations for an abuse of discretion. *See Christopher Cross, Inc. v. United States*, 461 F.3d 610, 612 (5th Cir. 2006). The Internal Revenue Manual ("IRM") is not legally binding and does not create rights in the taxpayer. *See Estate of Duncan v. Commissioner of Internal Revenue*, 890 F.3d 192, 200 (5th Cir. 2018). "However, courts can draw on IRM guidelines as factors to assess the propriety of IRS actions." *Id.*

Section 7122 authorizes the Secretary to compromise any civil case arising under the internal revenue laws prior to reference to the DOJ for prosecution. 26 U.S.C. § 7122. The Secretary of Treasury has discretion not to process a taxpayer's OIC. *Christopher Cross, Inc. v. United States*, 363 F. Supp. 2d 855 (E.D. La. 2004). Although section 7122 provides the exclusive method by which tax cases may be compromised, informal settlement agreements have been enforced using principles of equitable estoppel. *See Smith v. United States*, 328 F.3d 760 (5th Cir. 2003) (citing cases).

### C. Equitable Estoppel

"Equitable estoppel applies to the federal government only in the narrowest of circumstances." *DeGuerin v. United States*, 214 F. Supp. 2d 726, 744 (S.D. Tex. 2002) (citing *Linkous v. United States*, 142 F.3d 271, 277 (5th Cir. 1998)). To establish equitable estoppel against the government, the opposing party must show the four traditional elements of equitable estoppel as well as affirmative misconduct on the part of the government.[1] *Id.* "Affirmative misconduct" requires an affirmative misrepresentation or affirmative concealment of a material fact by the government. *Moosa v. INS*, 171 F.3d 994, 1004 (5th Cir. 1999). The government's conduct must be wrongful for it to be categorized as misconduct. *Linkous*, 142 F.3d at 278 n.3.

### III. THE COURT PARTIALLY GRANTS THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT

The Court must first determine whether the United States has met its initial burden of showing that there is an absence of genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The United States must inform the Court of the basis of its motion and identify the portions of the record which reveal there are no genuine material fact issues in order to carry this initial burden. The record demonstrates factual disputes between the parties. The United States appears to recognize these issues of fact but denies that they are material.

---

[1] The four traditional elements of equitable estoppel are that the party to be estopped (1) was aware of the facts, and (2) intended his act or omission to be acted upon; and that the party asserting estoppel (3) did not have knowledge of the facts, and (4) reasonably relied on the conduct of the other to his substantial injury.

Roden argues that Officer Dodgen and the IRS arbitrarily denied Roden's OIC and failed to follow certain provisions of the IRM in rejecting his 2018 OIC. Furthermore, Roden claims that the IRS should be equitably estopped from enforcing its tax liens because of Dodgen's alleged agreement to accept Roden's 2018 OIC when the Stonegate house was voluntarily sold. Roden alleges that he relied and acted on Dodgen's representation regarding the 2018 OIC, resulting in his selling the Stonegate home to his own detriment while maximizing the government's return. However, Dodgen disputes these facts. Dodgen claims that he did not condition his OIC recommendation on the sale of Stonegate and stated on several occasions that he intended to pursue foreclosure in his efforts to collect Roden's unpaid taxes.

### A.  *Officer Dodgen Did Not Abuse His Discretion in Denying Roden's OIC*

First, Roden claims that Officer Dodgen made several misrepresentations in his recommendation to deny OIC and to file suit. Moreover, Roden argues that, even if the IRS could validly reject his OIC, the IRS and Dodgen were obliged to follow the IRM procedures prior to discarding his OIC. For instance, Roden alleges that Dodgen violated IRM 5.17.12.20.2.2(1)(B), which instructs revenue officers to discuss "known health issues" of the taxpayer. Officer Dodgen stated in his narrative report that "[t]here are currently no known health issues," but Roden claims that Dodgen had actual knowledge that Roden suffered a heart attack. Roden claims that misrepresentations such as these constitute an abuse of discretion that precludes the government from enforcing its liens.

The Court disagrees. First, it is well-established law that the IRM is not legally binding and does not create rights in the taxpayer. *See Estate of Duncan*, 90 F.3d at 200.[2] Moreover, Chapter 5.17 of the IRM is titled "Legal Reference Guide for Revenue Officers." Even if Dodgen failed to follow the IRM procedures alleged by Roden, Roden has cited no authority to suggest that minor violations of a reference guide for revenue officers would preclude the government from enforcing a valid tax lien.

Roden claims that the IRS's rejection of his OIC was an abuse of discretion. The Court holds that no abuse of discretion occurred. First, the IRS is under no duty to accept an OIC, even when filed in good faith. 26 U.S.C. § 7122 ("The Secretary *may* compromise . . .") (emphasis added); *see, e.g.*, *Magnolia Media Group, Ltd. v. United States*, No. 4:03-CV-110-A, 2003 WL 23190613 (N.D. Tex. Dec. 15, 2003) (holding that an appeals officer did not abuse his discretion by rejecting an OIC made by a taxpayer with a history of noncompliance with payroll tax laws). Second, the record indicates that Dodgen recommended, and the IRS affirmed, the denial of Roden's OIC based on an extensive history of delinquent tax payments dating back to 2009. Officer Dodgen considered "Roden's history of noncompliance in paying his taxes, . . . multiple Collection Due Process ('CDP') events, CDP hearings withdrawn by Roden's request, a rejected 2015

---

[2] This view is not only held by the Fifth Circuit but shared among other circuits as well. *See, e.g.*, *Fargo v. C.I.R.*, 447 F.3d 706, 713 (9th Cir. 2006); *Carlson v. United States*, 126 F.3d 915, 922 (7th Cir. 1997); *Valen Mfg. Co. v. United States*, 90 F.3d 1190, 1194 (6th Cir. 1996); *Marks v. Comm'r*, 947 F.2d 983, 986 n.1 (D.C. Cir. 1991) (holding that it "is well-settled . . . that the provisions of the [Internal Revenue M]anual are directory rather than mandatory, are not codified regulations, and clearly do not have the force and effect of law"); *United States v. Horne*, 714 F.2d 2206, 207 (1st Cir. 1983).

MEMORANDUM OPINION AND ORDER – PAGE 7

OIC, failed installment agreements, and IRS levies and liens to attempt to collect millions of dollars of aging tax debts that Roden delayed and avoided paying." Decl. of David Dodgen 5 [19-1]. The Court determines that no abuse of discretion occurred in the rejection of Dodgen's OIC.

### B. Equitable Estoppel Does Not Bar Summary Judgment

Finally, Roden argues that the IRS should be equitably estopped from enforcement of its federal tax liens because Officer Dodgen conditioned acceptance of Roden's 2018 OIC on the voluntary sale of the Stonegate home. Roden claims that he detrimentally relied on Dodgen's statement and sold his Stonegate home under the assumption that the IRS would subsequently accept his OIC. Having upheld his end of the alleged bargain, Roden seeks to receive the benefit, namely, estopping the government from enforcing its tax liens through acceptance of his 2018 OIC. Officer Dodgen denies having ever made such a condition. Decl. of David Dodgen [19-1]. For the purposes of summary judgment, the Court will assume that Dodgen stated that he would accept Roden's OIC upon voluntary sale of the Stonegate residence. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (factual controversies are resolved in favor of the nonmovant).

The Court determines that Dodgen's alleged statement does not present a genuine issue of material fact. First, the Court notes the strong presumption that equitable estoppel does not apply against the government in tax contexts. *DeGuerin*, 214 F. Supp. 2d at 744. Furthermore, Officer Dodgen lacked the authority to make such a condition, and any reliance on Dodgen's alleged statement is unreasonable as a matter of law. *See United States v. Brown*, No. 4:09-CV-554, 2010 WL 5535761 (E.D. Tex. Dec. 2, 2010)

MEMORANDUM OPINION AND ORDER – PAGE 8

(recommending that equitable estoppel did not apply when revenue officer exceeded his authority in agreeing to compromise). Revenue officers merely make a preliminary determination that must later be approved by the IRS, and in dealing with the government, Roden is charged with knowledge of applicable statutes and regulations. *Delohery v. I.R.S., Dept. of Treasury, U.S.*, 843 F. Supp. 666, 669 (D. Colo. 1994) (citing *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380 (1947)). Thus, Roden should have known that Dodgen's representations were not binding. *Id.* (holding that taxpayer "should have known that [revenue officer's] oral representation of compromise was not binding"). Furthermore, "estoppel mandates that anyone entering into an agreement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Brown*, 2010 WL 5535761, at *5. "Regardless of the strong moral implications, it is well established that the Government is not bound by the unauthorized or incorrect statements of its agents." *Posey v. United States*, 449 F.2d 228, 234 (5th Cir. 1971). Because Roden has not met his burden of establishing the element of reasonable reliance, the Court determines that equitable estoppel does not bar summary judgment.

### C. Roden Raises a Genuine Issue of Fact as to the Judgment Amount

Finally, Roden claims that the judgment sum sought is incorrect because the IRS incorrectly credited him $710,317.64 rather than $763,317.64 for the sale of the Stonegate residence. *See* Def.'s Response to Mot. for Summ. J. 4 [24]. Roden cites closing statements to show that the sale of the Stonegate residence generated more than $710,317.64 for the IRS. *See* Ex. Def.'s Response to Mot. for Summ. J. 495, 691 [23-2].

MEMORANDUM OPINION AND ORDER – PAGE 9

Because the United States did not reply to Roden's argument, the Court determines that a genuine issue of material fact exists as to the judgment amount.

## CONCLUSION

Because the United States has shown that there is no genuine dispute as to any material fact and is entitled to judgment as a matter of law, the Court grants the United States partial summary judgment on the issue of liability. Because the parties dispute the amount of damages, the Court defers issuing final judgment.

Signed December 8, 2020.

_____
David C. Godbey
United States District Judge